979 So.2d 80 (2007)
T.B. and S.B.
v.
T.A.P.
2060392.
Court of Civil Appeals of Alabama.
August 3, 2007.
*82 W. Mark Anderson IV of Smith & Anderson, Montgomery; and Catherine R. Steinwinder of Law Offices of Judy H. Barganier, P.C., Montgomery, for appellants.
Submitted on appellants' brief only.
PER CURIAM.
This appeal stems from an interstate custody dispute involving two children, C.A.P., born in March 1999 ("the older child"), and Z.R.P., born in March 2000 ("the younger child"). S.B. and T.B., the maternal aunt and uncle of the two children, appeal from an order of the Montgomery Juvenile Court refusing to assert temporary emergency jurisdiction over the case. We reverse and remand.
This case has a long and convoluted procedural history. T.A.P. ("the father") committed repeated acts of domestic violence against A.J.P. ("the mother") throughout their marriage. In January 2004, after the father admitted that he had been arrested and charged with exhibiting a dangerous weapon in a threatening manner to the mother while he was on probation for a prior domestic-violence charge, a federal magistrate entered an order prohibiting the father from contacting the mother or the children without the permission of a court of competent jurisdiction. The judge further sentenced the father to 30 days' confinement and required the father, upon his release, to stay within the boundaries of the state of Florida unless he obtained permission from his probation officer.
In February 2005, the Superior Court of Maricopa County, Arizona ("the Arizona court"), entered a judgment divorcing the father and the mother and awarding sole custody of the children to the mother while expressly denying "unsupervised parenting time" with the children to the father; the judgment noted that the father was currently incarcerated and indicated that he had been convicted on more than one occasion *83 of having committed domestic violence against the mother.
The mother subsequently remarried, and the children resided with her and their stepfather, H.B., in Arizona. On May 4, 2006, the mother was killed in a motor-vehicle accident. The stepfather subsequently petitioned for custody of the children. On May 8, 2006, the Arizona court granted the stepfather temporary custody of the children. The stepfather then took the children to Montgomery, Alabama, where the maternal aunt and uncle reside. On May 23, 2006, the stepfather executed a special power of attorney granting to the maternal aunt and uncle temporary custody rights to the children.
On June 2, 2006, the maternal aunt and uncle filed a petition in the Montgomery Juvenile Court ("the Alabama court") seeking sole legal custody of the children based on the children's alleged dependency. In that petition, the aunt and uncle averred that the father had a criminal record and was unable to discharge his responsibilities to the children and that the father was unfit to have custody of, or even visitation with, the children. On June 9, 2006, the stepfather filed a motion in the Arizona court requesting that the Arizona court relinquish jurisdiction, dismiss his custody petition, and transfer the case to Alabama. By the time he filed that petition, the stepfather had moved from Arizona.
On June 13, 2006, the Arizona court held a hearing on the custody issue. Neither the stepfather nor the maternal aunt and uncle appeared at the hearing. The father appeared via counsel. The attorney for the maternal aunt and uncle filed a copy of the Alabama dependency petition with the Arizona court. The father's counsel asked the Arizona court to award custody to the father. The Arizona court ruled that it retained jurisdiction over the custody issue and granted custody of the children to the father.
On June 15, 2006, the attorney for the maternal aunt and uncle filed a letter brief with the Arizona court requesting the Arizona court to relinquish jurisdiction of the custody issue to the Alabama court. That same day, the attorney for the father filed a letter brief requesting the Arizona court to retain jurisdiction until a full hearing could be held on the jurisdiction issue, at which time the father would request that the Arizona court relinquish jurisdiction to a Florida court. On June 16, 2006, the clerk of the Alabama court made the following entry on the case-action-summary sheet in the dependency action: "Per [the Alabama court judge], Maricopa County, Arizona is going to retain jurisdiction of the case. Verbally advised by [the Alabama court judge] that [complaint] will be dismissed."
On June 19, 2006, the Arizona court entered another order in which it expounded on the basis for its jurisdiction and documented a telephone conference regarding jurisdiction it had with the Alabama court. The Arizona court concluded that it had exclusive continuing jurisdiction stemming from the 2005 divorce judgment addressing custody and the stepfather's 2006 petition for custody (the Arizona court determined that, when the stepfather filed his petition, the stepfather and the children were Arizona residents). The Arizona court ruled that it would retain jurisdiction until a hearing set on July 13, 2006. The Arizona court granted the stepfather temporary custody pending that hearing. The Arizona court noted that the Alabama court had agreed to abide by the jurisdictional decision of the Arizona court. On June 21, 2006, the Alabama court entered on the case-action-summary sheet in the dependency action a judgment dismissing the case before it.
*84 On July 13, 2006, the Arizona court held another hearing at which it found that it retained continuing exclusive jurisdiction over the custody issue but that Arizona was no longer a convenient forum since the parties were no longer in Arizona. The Arizona court concluded that Florida would be the appropriate forum. The Arizona court stayed any further proceedings in the Arizona court pending the filing of a custody petition in Florida. The Arizona court left it to the Florida court to determine whether it should relinquish jurisdiction to the Alabama court.
On August 3, 2006, the Arizona court reviewed a copy of the father's custody petition that had been filed in the Circuit Court of Brevard County, Florida ("the Florida court"). Accordingly, the Arizona court relinquished jurisdiction to the Florida court.
On August 16, 2006, the maternal aunt and uncle filed a motion with the Alabama court entitled "Motion to Reinstate." In that motion, the maternal aunt and uncle requested the Alabama court to assert temporary emergency jurisdiction over the action, averring that the children needed "special" medical care and that the aunt and uncle "need[ed] proper authority to see that those special medical needs [were] met." On August 17, 2006, the Alabama court entered an order denying the "Motion to Reinstate" until the Florida court could rule on the jurisdictional issue.
The Florida court decided to exercise jurisdiction over the custody issue on October 27, 2006, and issued an order granting the father a "re-introduction" period during which he was to visit with the children over the telephone and in person in appropriate settings. On November 3, 2006, the maternal aunt and uncle filed a second "Motion to Reinstate" in the Alabama court. The sole significant difference between the first and second motions to reinstate was an averment that the Florida court had decided to exercise jurisdiction. The Alabama court entered an order on November 3, 2006, granting the second "Motion to Reinstate" pending a conference between the Alabama court and the Florida court "and the final jurisdictional determination." On November 16, 2006, the Alabama court granted the maternal aunt and uncle's request to conduct a jurisdictional conference with the Florida court.
Before the Alabama and Florida courts engaged in a jurisdictional conference, the maternal aunt and uncle allowed the father telephone contact with the children. According to the maternal aunt and uncle, the younger child became withdrawn and noncommunicative following the telephone calls. The maternal aunt and uncle arranged for a licensed clinical psychologist to assess and treat the younger child. On December 12, 2006, the psychologist issued a report indicating that the younger child was comfortable in his current living situation and that it would be in the child's best interest for a full custody evaluation to take place before any custody decisions or further placements were made.
On that same day, and without the benefit of the psychologist's report, the Florida court issued a second order granting the father visitation in order to facilitate his eventual reunification with the children.
On December 19, 2006, the Florida court held a hearing on the father's emergency motion to pick up the minor children and the maternal aunt's motion to relinquish jurisdiction. On January 17, 2007, the Florida court determined that the maternal aunt was not a proper party to the Florida action. The Florida court also found that the father had proven he was fit to take custody of the children. The Florida court further found that there was evidence indicating that the father had not received the visitation it had ordered on *85 December 12, 2006. The Florida court again ordered the father to have visitation and warned that if such visitation was not allowed, the Florida court would order earlier reunification with the father so long as it was not detrimental to the children.
Apparently, the Florida court and the Alabama court held a telephone conference in early February 2007 to determine which court should exercise jurisdiction. During that telephone conference, the Florida court indicated that it would retain exclusive jurisdiction over the custody issue. The Alabama court evidently notified counsel that it intended to defer to the Florida court.
On February 6, 2007, the Florida court entered an order transferring physical custody of the children to the father. In that order, the Florida court found that the stepfather had failed to file any pleadings in the Florida action alleging the unfitness of the father or any potential harm to the children by being placed in the father's custody. Further, the stepfather had not complied with the Florida court's orders by providing gradual contact between the father and the children. The Florida court ordered that the father would be permitted to immediately pick up the children and bring them to his home in Florida.
The same day the Florida court issued its pick-up order, the maternal aunt and uncle filed a "Motion to Reconsider Jurisdictional Determination" and a "Motion for Emergency Jurisdiction" in the Alabama court. In the first motion, the aunt and uncle argued that the Arizona court had no jurisdiction over the custody issue at the time it issued its June 13, 2006, order and, thus, any action it took on that date or thereafter was void, and that Alabama had had jurisdiction over the matter as the home state of the children since May 2006, when the children moved to this state. In the second motion, the maternal aunt and uncle argued that the Alabama court should assert temporary emergency jurisdiction over the action to make a full custody evaluation because of the younger child's psychological reaction to the father.
The Alabama court denied the maternal aunt and uncle's motions on February 8, 2007, noting that there was a case pending in the Florida court and that that court had jurisdiction. The maternal aunt and uncle then filed a notice of appeal and a motion to stay, and this court entered an order on February 16, 2007, staying the effect of the Alabama court's February 8, 2007, orders pending appellate review.

Discussion
The dependency petition filed in the Alabama court by the maternal aunt and uncle on June 2, 2006, constituted an action seeking modification of the Arizona court's 2005 custody determination. Under Ala.Code 1975, § 30-3B-203, as a general rule, an Alabama court may not modify a child-custody determination made by a court of another state unless the Alabama court had jurisdiction to make an initial custody determination pursuant to Ala. Code 1975, § 30-3B-201. That section provides:
"(a) Except as otherwise provided in Section 30-3B-204, a court of this state has jurisdiction to make an initial child custody determination only if:
"(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
"(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the *86 child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 30-3B-207 or 30-3B-208, and:
"a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
"b. Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;
"(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 30-3B-207 or 30-3B-208; or
"(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).
"(b) Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this state.
"(c) Physical presence of a child is not necessary or sufficient to make a child custody determination."
At the time the maternal aunt and uncle filed their dependency petition,[1] the Alabama court believed it did not have jurisdiction to make any custody determination because the Arizona court was asserting jurisdiction over the matter. Accordingly, it dismissed the petition.
Rule 41(b), Ala. R. Civ. P., states that an involuntary dismissal ordinarily acts as an adjudication of the merits. As an exception, if the court dismisses an action for lack of jurisdiction, the dismissal is not considered an adjudication of the merits. Nevertheless, the dismissal does act as an adjudication of the jurisdiction question and precludes relitigation of that question. See Restatement (Second) of Judgments § 20, com. b and Illus. 1 and 2. Thus, the June 21, 2006, order dismissing the maternal aunt and uncle's petition constituted a final adjudication of the issue of the Alabama court's jurisdiction under § 30-3B-203. The maternal aunt and uncle did not file any postjudgment motion relating to that determination or appeal the June 21, 2006, judgment. Hence, this court is precluded from considering the merits of the Alabama court's determination that it lacked jurisdiction to modify the Arizona court's 2005 custody judgment under § 30-3B-203.
The maternal aunt and uncle filed a "motion to reinstate" on August 16, 2006. In that motion, the aunt and uncle requested for the first time that the Alabama court assert temporary emergency jurisdiction over the action pursuant to Ala. Code 1975, § 30-3B-204. That section allows an Alabama court to exercise jurisdiction over a custody issue if the child is present within this state and has been abandoned or "it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." Ala.Code 1975, § 30-3B-204(a).
Judge Pittman, in his dissent, characterizes this motion as a Rule 60(b), Ala. R. Civ. P., motion. However, in their August *87 2006 motion, the maternal aunt and uncle were not requesting relief from the June 21, 2006, judgment. They were asserting facts coming into existence since the entry of the June 21, 2006, judgment; those facts warranted jurisdiction on a wholly different ground. When it dismissed the action for lack of jurisdiction under § 30-3B-203, the Alabama court did not make, and could not have made, any determination that it lacked jurisdiction under § 30-3B-204. Furthermore, it would totally undermine the policies behind § 30-3B-204 if this court were to rule that a juvenile court of this state cannot exercise temporary emergency jurisdiction to protect children within this state solely on the basis that the juvenile court had previously determined it did not have "regular" jurisdiction to modify a child-custody determination.
On August 17, 2006, the Alabama court denied the maternal aunt and uncle's motion to reinstate. That denial amounted to a final judgment that the Alabama court lacked jurisdiction to modify custody on an emergency basis under § 30-3B-204. The aunt and uncle did not appeal that judgment, but, instead, filed a "motion to reinstate" on November 3, 2006, alleging that the Florida court had assumed jurisdiction over the case. In that motion, the maternal aunt and uncle again requested the Alabama court to exercise temporary emergency jurisdiction over the custody issue.
The November 3, 2006, motion amounted to a Rule 60(b)(6) motion,[2] which the Alabama court subsequently denied on February 8, 2007, following a telephone conference with the Florida court in which the courts agreed that Florida would exercise jurisdiction. The aunt and uncle submitted two additional filings in support of their request that the Alabama court exercise temporary emergency jurisdiction over the custody dispute; those filings were entitled "Motion to Reconsider Jurisdictional Determination" and "Motion for Emergency Jurisdiction."
On February 8, 2007, after a telephone conference with the Florida court, the Alabama court entered an order denying the motion to reinstate on the basis that the Florida court had proper jurisdiction over the case.
In Wood v. Wade, 853 So.2d 909, 912-13 (Ala.2002), the Alabama Supreme Court stated:
"The decision to grant or deny a Rule 60(b)(6) motion is within the discretion of the trial judge. Ex parte Wal-Mart Stores, Inc., 725 So.2d 279, 283 (Ala. 1998). The only issue we consider on an appeal from the denial of a Rule 60(b) motion is whether, by denying the motion, the trial court abused its discretion. Id. Therefore, an appeal from the denial of a Rule 60(b)(6) motion `does not present for review the correctness of the judgment that the movant seeks to set aside, but presents for review only the correctness of the order from which the appeal is taken.' Satterfield v. Winston Indus., Inc., 553 So.2d 61, 63 (Ala.1989).
"Rule 60(b)(6) is an extreme remedy and relief under Rule 60(b)(6) will be granted only `in unique situations where a party can show exceptional circumstances sufficient to entitle him to relief.' Nowlin v. Druid City Hosp. Bd., 475 So.2d 469, 471 (Ala.1985)."
A trial court exceeds its discretion when it considers factors irrelevant to its *88 determination or bases its decision on a mistaken impression of the law. See Richards v. Aramark Servs., Inc., 108 F.3d 925, 927 (8th Cir.1997). In this case, the Alabama court denied the motion for temporary emergency jurisdiction solely on the ground that a Florida court had assumed jurisdiction over the custody of the children. Under § 30-3B-204, however, the fact that another state has obtained and is exercising jurisdiction over a custody issue involving the same children is irrelevant. Section 30-3B-204(a) allows an Alabama state court to assume temporary emergency jurisdiction over a child within this state if the child is subjected to or threatened with mistreatment or abuse; this emergency jurisdiction is proper even if another state has jurisdiction and even if that other state has exercised its jurisdiction by conducting child-custody proceedings or by making a child-custody determination. See Ala.Code 1975, § 30-3B-204(d).
In cases in which a trial court is faced with a motion for temporary emergency jurisdiction, its decision to grant or deny the motion does not depend on whether another state has jurisdiction over custody matters. Its initial inquiry should be whether there are sufficient grounds to invoke its temporary emergency jurisdiction. That is, the trial court must first decide whether the child is present within this state. If so, the trial court must next decide whether the child has been abandoned or whether an emergency exists in which it is necessary for the court to protect the child because the child is subject to or threatened with mistreatment or abuse. If the party seeking to invoke the temporary emergency jurisdiction of the court reasonably satisfies the court that those conditions are met, the court will obtain temporary emergency jurisdiction, even if another state has jurisdiction.
In this case, the maternal aunt and uncle alleged that the children had special medical needs and that the younger child had an adverse psychological reaction to communicating with his father who, at one time, had been denied any access to the children because of his repeated acts of domestic violence and who, at the time of the final judgment, had obtained an order from the Florida court to pick up the children. The Alabama court should have held a hearing to determine the substance of these allegations and should have made a determination on proper bases as to whether it had acquired temporary emergency jurisdiction instead of summarily dismissing the petition on the erroneous ground that the Florida court was exercising jurisdiction.
In his dissent, Presiding Judge Thompson argues that the Alabama court properly performed its duties under § 30-3B-204 by telephoning the Florida court, verifying that the Florida court was exercising jurisdiction of the case, and yielding to the jurisdiction of the Florida court. Presiding Judge Thompson further argues that we have assumed facts not supported by the record on appeal. We disagree. The plain language of the statute indicates that the Alabama court is to communicate with a court in which a child-custody proceeding has been commenced, not for the purposes of determining which court will exercise jurisdiction over the custody dispute, but to "resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order." Ala.Code 1975, § 30-3B-204(d). In this case, the record on appeal, specifically that portion of the record containing the Alabama court's own handwritten orders, indicates that the Alabama court simply determined from its telephone call with the Florida court that it would not assume jurisdiction because the Florida court was exercising its jurisdiction *89 over the custody dispute. The Alabama court did not recite any other consideration in its order denying the maternal aunt and uncle's motion. The order did not attempt to resolve the emergency, to protect the safety of the parties and the child, or to determine a period for the duration of a temporary order. In fact, the telephone call took place without the benefit of any hearing in the Alabama court to determine if, in fact, an emergency existed and without a finding that any order of any duration was necessary to protect the children. The Alabama court could not have possibly discussed with the Florida court "a period for the duration of the temporary order" when it had not even entered such an order or taken any evidence to substantiate such an order.
Accordingly, we reverse the judgment of the Alabama court and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
BRYAN, THOMAS, and MOORE, JJ., concur.
THOMPSON, P.J., and PITTMAN, J., dissent, with writings.
THOMPSON, Presiding Judge, dissenting.
Although I agree with the majority opinion insofar as it recognizes a trial court's ability to exercise emergency jurisdiction and to take interim protective measures in child-custody cases when necessary, I cannot agree with the majority opinion when it holds the trial court in error for failing to exercise temporary emergency jurisdiction in this case. The majority opinion makes assumptions that, I believe, are not supported by the record on appeal.
The Official Comment to § 30-3B-204, Ala.Code 1975, a part of the Uniform Child Custody Jurisdiction and Enforcement Act ("the Act"), states that temporary emergency jurisdiction is "`an extraordinary jurisdiction reserved for extraordinary circumstances.'" The Official Comment further provides that the portion of the Act that has been codified in Alabama as § 30-3B-204
"codifies and clarifies several aspects of what has become common practice in emergency jurisdiction cases under the [Uniform Child Custody Jurisdiction Act] and [the Parental Kidnaping Prevention Act]. First, a court may take jurisdiction to protect the child even though it can claim neither home state nor significant connection jurisdiction. Second, the duties of states to recognize, enforce and not modify a custody determination of another state do not take precedence over the need to enter a temporary emergency order to protect the child.
"Third, a custody determination made under the emergency jurisdiction provisions of this section is a temporary order. The purpose of the order is to protect the child until the state that has jurisdiction under Sections 201-203 enters an order."
Section 30-3B-204(c), Ala.Code 1975, provides:
"If there is a previous child custody determination that is entitled to be enforced under this chapter, or a child custody proceeding has been commenced in a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under Sections 30-3B-201 through 30-3B-203. The order issued in this state *90 remains in effect until an order is obtained from the other state within the period specified or the period expires."
(Emphasis added.)
Subsection (d) of § 30-3B-204 provides as follows:
"A court of this state which has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has commenced in, or a child custody determination has been made by, a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, shall immediately communicate with the other court. A court of this state which is exercising jurisdiction pursuant to Sections 30-3B-201 through 30-3B-203, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order."
The record reveals that, after the Alabama court granted the maternal aunt and uncle's second "motion to reinstate," filed on November 3, 2006, the Alabama court conducted a telephone conference with the Florida court and, following that conversation, deferred to the jurisdiction of the Florida court. When the Alabama court communicated with the Florida court, the Florida court had already assumed jurisdiction of the case. Under § 30-3B-204, even if the Alabama court had entered an emergency order it would have been temporary in nature and would have lapsed after the maternal aunt and uncle had adequate time to obtain an order from the court with permanent jurisdiction. § 30-3B-204(c). In this case, the court with permanent jurisdiction is the Florida court.
The facts of this case are certainly heart-wrenching and raise serious concerns about the father's being awarded custody of the children. Unfortunately, these are the types of issues the courts have to deal with on a regular basis. The issue of the permanent custody of the children is one for the Florida court to determine, and I cannot hold the Alabama court in error for deferring to the jurisdiction of the Florida court as prescribed by the Act. The issues raised by the maternal aunt and uncle can and should be properly addressed in a full hearing in the Florida court.
PITTMAN, Judge, dissenting.
I dissent from the reversal. In my view, this court lacks appellate jurisdiction and is allowing hard facts to make bad law.
In juvenile matters, "[i]f no procedure is specifically provided in [the Alabama Rules of Juvenile Procedure] or by statute, the Alabama Rules of Civil Procedure [are] applicable" except where they are inconsistent with the Rules of Juvenile Procedure. Rule 1(A), Ala. R. Juv. P. Although a postjudgment motion in an action governed by the Rules of Civil Procedure may be filed within 30 days of the entry of a final judgment, see Rules 50(b), 52(b), 55(c), 59(b), and 59(e), Ala. R. Civ. P., Rule 1(B), Ala. R. Juv. P., provides that "[a]ll postjudgment motions . . . provided for by the Alabama Rules of Civil Procedure . . . must be filed within 14 days after entry of judgment and shall not remain pending for more than 14 days." The "motion to reinstate" filed by the maternal aunt and uncle was filed in case no. JU-06-570 and case no. JU-06-571 on August 16, 2006, more than 14 days after the entry of the Alabama court's judgment dismissing those cases; therefore, it is not properly cognizable *91 as a "postjudgment" motion directly attacking the Alabama court's judgment of dismissal.
The only mechanism recognized by Alabama law whereby a litigant may collaterally attack a civil judgment by filing a motion in the same civil action is that set forth in Rule 60(b), Ala. R. Civ. P., which permits the filing of motions for relief from a judgment. Rule 60(b) explicitly provides that various common-law writs permitting reexamination of a civil judgment "are abolished" and that "the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action." Notably, the maternal aunt and uncle did not elect to pay a filing fee and file an independent action; rather, they chose to attack the Alabama court's judgment via a motion filed in the same court. The "motion to reinstate" thus cannot properly be characterized as anything other than a motion under Rule 60(b), Ala. R. Civ. P., seeking to avoid the effect of the Alabama court's judgment. See Lewis v. Providence Hosp., 483 So.2d 398, 398 n. 1 (Ala.1986) (holding that a "motion to reconsider" a judgment of dismissal filed more than 30 days after the judgment "could at best be considered a Rule 60(b) motion for relief from judgment").
Rule 60(b) permits a party to seek relief from a civil judgment on several bases, including where "it is no longer equitable that the judgment should have prospective application" (Rule 60(b)(5)) or where "any other reason justifying relief from the operation of the judgment" exists (Rule 60(b)(6)). The maternal aunt and uncle averred in their motion that the Arizona court had determined on July 13, 2006, that it was no longer a convenient forum, that the Arizona court had relinquished jurisdiction to the Florida court, and that the Arizona court had stated that the Florida court could determine whether "it should defer the matter to Alabama"; the maternal aunt and uncle also averred that the children needed "special" medical care, that the aunt and the uncle "need[ed] proper authority to see that those special medical needs [we]re met," and that the Alabama court should exercise temporary emergency jurisdiction under Ala.Code 1975, § 30-3B-204. On August 17, 2006, the Alabama court entered an order denying the "Motion to Reinstate." No appeal was taken from that order.
At the moment the Alabama court denied the maternal aunt and uncle's "Motion to Reinstate" seeking relief from the judgment of dismissal, the cases brought by the maternal aunt and uncle effectively terminated in that the Alabama court lost jurisdiction to grant relief on the grounds stated in the motion. As we noted in Pinkerton Security & Investigations Services, Inc. v. Chamblee, 934 So.2d 386 (Ala. Civ.App.2005):
"Alabama caselaw has placed a significant limitation upon the availability of relief under Rule 60(b) where a movant has previously sought relief under that rule. As stated by the Alabama Supreme Court in Ex parte Keith, 771 So.2d 1018 (Ala.1998), `[a]fter a trial court has denied a postjudgment motion pursuant to Rule 60(b), that court does not have jurisdiction to entertain a successive postjudgment motion to "reconsider" or otherwise review its order denying the Rule 60(b) motion.' 771 So.2d at 1022 (emphasis added [in Pinkerton]). In other words, a party who has previously filed an unsuccessful motion seeking relief under Rule 60(b) may not properly file a second motion in the trial court that, in effect, requests the trial court to revisit its denial of the first motion, such as by reasserting the grounds relied upon in the first motion. *92 See Wadsworth v. Markel Ins. Co., 906 So.2d 179, 182 (Ala.Civ.App.2005) ('Successive Rule 60(b) motions on the same grounds are generally considered motions to reconsider the original ruling and are not authorized by Rule 60(b).'); but see McLendon v. Hepburn, 876 So.2d 479, 483 (Ala.Civ.App.2003) (second Rule 60(b) motion held procedurally proper because second motion requested relief based on an `entirely different ground' than first motion, raising an issue 'that could not even have been raised' when original judgment was entered)."
934 So.2d at 390-91. Thus, the Alabama court lacked jurisdiction to act upon the motion filed by the maternal aunt and uncle on November 3, 2006, and its orders purporting to act on that motion are void.
In dissenting, I do not intend to minimize the tragic loss of their mother that the children at issue in this case have suffered, nor do I doubt the significant adjustment that awaits them upon reunion with their father. However, the Alabama court has entered a final judgment in this case, and this appeal must be dismissed. Absent a new action alleging facts and events that would warrant an Alabama court's assumption of emergency jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act, the principles of finality will not allow any further interference with the decisions of the Arizona court and the Florida court concerning the custody of the children at issue.
NOTES
[1] The jurisdiction of an Alabama court over child-custody matters is determined as of the time of the filing of the action. See Peterson v. Peterson, 965 So.2d 1096, 1099 (Ala.Civ.App. 2007). See also § 30-3B-202, Ala.Code 1975, Official Comment ("Jurisdiction attaches at the commencement of a proceeding.").
[2] Rule 60(b), Ala. R. Civ. P., states:

"On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment . . . for the following reasons: . . . (6) any other reason justifying relief from the operation of the judgment."